IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THOMPSON SERVICES, INC.<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as United States Secretary of Treasury; and THE UNITED STATES OF AMERICA,<br><br>    Defendants. | CASE NO:  3:22-1739-MGL<br><br>**COMPLAINT** |

Plaintiff Thompson Services, Inc. ("Thompson"), by and through its counsel of record, and for its claims for relief against Defendants, the United States Small Business Administration ("SBA"), Isabella Casillas Guzman in her official capacity as Administrator of the SBA, Janet Yellen in her official capacity as United States Secretary of Treasury, and the United States of America, states and alleges as follows:

**NATURE OF THE ACTION**

1. To mitigate the economic devastation caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). Congress's purpose in adopting the CARES Act was to ensure continued employment and income for the millions of Americans employed by small businesses. To accomplish that critical goal, Congress created the Paycheck Protection Program ("PPP"), which authorizes the SBA to guarantee hundreds of billions of dollars in loans to small

businesses. PPP loans were to be made by private lenders, and Congress pledged to forgive these loans (i.e., the federal government would reimburse the bank) provided that, *inter alia*, the borrowers used most of the proceeds to pay employees' wages. *See* 15 U.S.C. §§ 636(a)(36), 9005- 06.

2.  "The PPP is a *new* loan program to be administered by the SBA under Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a)). Its purpose is to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms." *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (emphasis added). Section 1106 of the CARES Act "provides that a borrower's indebtedness under a PPP loan will be forgiven to the extent that the borrower uses the funds to pay expenses relating to payroll, mortgage interest, rent, and utilities during the eight-week period following the loan's origination." *Id.* (citing Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020)).

3.  Historically, prior to the CARES Act's enactment, the SBA treated certain classes of businesses as ineligible for other SBA lending programs. *See* 13 C.F.R. § 120.110. Aware of this, Congress purposefully intended that the CARES Act would "[i]ncrease[] eligibility" for forgivable PPP loans, *id.* § 636(a)(36)(D), making them widely available to small businesses across the commercial spectrum. Congress did so by establishing specific, narrow criteria for PPP loan guarantee eligibility and by providing unambiguously that "*any* business concern . . . *shall* be eligible" for a forgivable PPP loan if it met those criteria. *Id.* § 636(a)(36)(D) (emphasis added).

4.  Relying on this, Thompson, a small equipment rental company, applied for a PPP loan on April 6, 2020. Thompson was approved by its lender Business Development Corporation of South Carolina, in the amount of $407,192.00 on April 20, 2020.

5.     An eligible recipient shall be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds are used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Paycheck Protection Program Flexibility Act ("Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641, § 3(b) (2020). The SBA must reimburse the private lender for any PPP loan determined eligible for forgiveness. CARES Act § 1106(c)(3). PPP loan recipients must submit forgiveness applications to be considered. *Id.* § 1106(e).

6.     Despite clear direction from the CARES Act, the SBA only approved forgiveness for $89,679.00 of the $407,192,00 PPP loan finding that Thompson was ineligible for $317,513.00 of the original loan. (Ex. 1)

7.     The SBA is now claiming that Paragraph 36 (D) (i) of 15 U.S.C. § 636 (a), which begins with the words "In general," makes clear that the paragraph describes general eligibility requirements and does not create an absolute requirement guarantying PPP loan eligibility.

8.     The SBA then draws an analogy to a 16-year-old applying for a driver's license but not having met other eligibility requirements such as drivers education and testing to the case at hand, where Thompson has met the size requirement and should be required to meet all other requirements of (15 U.S.C. §636(a)(36)). Section 15 U.S.C. §636(a)(36) defines an "eligible recipient" as an individual or entity that is eligible to receive a covered loan. Thompson is an eligible entity.

9.     Small businesses risked their financial security by keeping employees on payroll during the COVID-19 pandemic with the benefit of PPP loans they were eligible to receive when they applied for them *and* when the SBA approved them. Now, having done everything that Congress required of them, Thompson is told that it must repay the majority of its loan because of the SBA's unlawful application of the affiliation rules.

10.    Under the Administrative Procedure Act ("APA"), this action challenges the SBA's

application or non-application of the affiliation rules.

## PARTIES

11. Thompson is a small business based out of Columbia, South Carolina.

12. Thompson is an active equipment rental company. Thompson does not own any real estate, and substantially all revenues are derived from equipment rentals.

13. SBA is an independent federal agency created and authorized under 15 U.S.C. § 633 *et seq*. Under the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), the SBA administers the PPP.

14. Defendant Isabella Casillas Guzman is the Administrator of the SBA and is sued only in her official capacity. Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for causes of action brought under the APA.

15. Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is sued only in her official capacity.

16. Defendant United States of America is a proper defendant in APA cases. *See* 5 U.S.C. § 702.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

18. Thompson has standing to seek review of the affiliation and aggregation statutes because SBA has used these statutes to deny the majority of Thompson's loan forgiveness application.

19. Venue is proper in this judicial district under 28 U.S.C. § 1391(e).

20. The SBA's loan forgiveness denial is a final agency action under 5 U.S.C. § 704.

**FACTUAL BACKGROUND**

21. Thompson is a small equipment rental company located in Columbia, South Carolina.

22. Thompson does not own any real estate but instead spends most of its business managing equipment rentals to third parties.

23. Thompson is actively involved in the day-to-day operations, management, maintenance, and functions of renting the equipment.

24. Thompson suffered significant harm during the COVID-19 pandemic. As a result of this harm, Thompson considered terminating some of its employees and reducing the wages of other employees to have its business survive.

25. The federal agencies responsible for implementing the PPP had touted the program as providing payroll assistance to any business with fewer than 500 employees. *See*, *e.g.,* SBA, *Financial Assistance from the US SBA for Small Businesses and Non-Profits*, (Mar. 31, 2020) ("Businesses . . . with 500 or fewer employees may apply."); U.S. Dep't of Treas., *Small Business Paycheck Protection Program*, (Mar. 31, 2020) ("All Small Businesses Eligible"); *see also* 15 U.S.C. § 636(a)(36)(D).

26. On or around April 6, 2020, in the face of financial hardship and challenging decisions, Thompson submitted a PPP Borrower Application to Business Development Corporation of South Carolina (the "Lender") for a forgivable PPP loan in the amount of $407,182.00 to mitigate business losses and enable it to retain its employees through the economic downturn.

27. The Lender approved Thompson for a PPP loan on April 20, 2020.

28. At the time of the approval, Thompson operated under the provisions stated by Congress, which provided that loans were for all businesses that met the size requirements for small

businesses.

29. Loan proceeds were distributed to Thompson on April 20, 2020.

30. Thompson used its loan proceeds to meet payroll and other expenses permitted by the CARES Act.

31. Thompson used at least 60 percent of the loan proceeds for payroll.

32. While it experienced various operational challenges caused by the pandemic, Thompson was able to retain its working employees at the same payroll with the assistance of the PPP loan.

33. Due to receiving the PPP loan, Thompson did not reduce any of its employees' wages or terminate any of its employees.

34. Thompson and Rental Resource are brother /sister companies which must aggregate payroll.

    a. Both companies were owned 50% each by brothers William and John Thompson;

    b. The companies share common office space;

    c. The companies share common computer systems;

    d. The companies share the same accountant;

    e. The companies share a common administrative staff;

    f. Both companies conducted substantially the same businesses.

    g. Thompson rented general construction equipment and Rental rented portolets for use at construction and other sites;

    h. The companies entered into an Agreement in 1999 that payroll would be aggregated for reporting purposes with reimbursements made based on actual payroll (Ex 2;

    i. The companies operated for 20 years under this Agreement prior to the PPP;

    j.   The amounts reported under the PPP loan and requested loan forgiveness are consistent with this Agreement and are supported by the tax returns; (Ex 3)

    k.   The amount of the PPP loan and requested loan forgiveness is exactly the same as if each company had filed individually.

    l.   In early 2021 the Companies legally merged to confirm what had been their de facto 20 year arrangement and agreement.

35.   Thompson and Rental Resource must aggregate and treat wages/salaries as one employer.

36.   Therefore, Thompson aggregated the wages for both companies as required and reported in securing the PPP loan for $407,192.00. Any finding to the contrary of the necessity to aggregate is erroneous and is inconsistent with 13 C.F.R. §121.103 (f), 13 C.F.R. §121.301 (f) (4), 26 C.F.R. § 1.1563 (a) (3) (i) and 26 U.S. Code § 414.

37.   The use of the terms Thompson includes the salaries and wages and employees of Rental as has been consistently reported for approximately 20 years.

38.   On or around September 24, 2020, as permitted to do so under the CARES Act, Thompson submitted a PPP Loan Forgiveness Application (Form 3508) to the Lender, requesting forgiveness for its total PPP loan amount.

39.   The Lender determined Thompson should receive complete loan forgiveness in the amount of $ 407,192.00 and submitted its decision to the SBA for final review on December 8, 2020.

40.   Thompson's PPP Loan Forgiveness Application demonstrated it had met all of its obligations under the CARES Act, as the Lender had recognized.

## PROCEDURAL HISTORY

41. The U.S. Small Business Administration (SBA) Office of Capital Access requested substantial documentation supporting the loan.

42. Thompson provided all requested substantial documentation to the SBA.

43. Despite this documentation and the lender's recommendation for forgiveness, the SBA issued a final PPP loan review decision finding Thompson ineligible for the amount of PPP loan received and limited PPP loan forgiveness to $89,679.00. (Ex 1).

44. On November 5, 2021, Thompson timely filed an appeal from that final SBA loan review decision.

45. In its appeal, Thompson argued that the Final SBA Loan Review Decision was erroneous and requested that the Office of Hearings and Appeals (OHA) reverse it and find Thompson eligible for the additional $317,513.00 PPP loan forgiveness.

46. On December 6, 2021, the OHA issued a Notice and Order requiring the filing of the Administrative Record (AR) by December 27, 2021, providing for Thompson to Object to the same by January 7, 2022, and allowing for SBA to respond to the Petition by January 24, 2022.

47. On December 20, 2021, the AR was filed.

48. On December 29, 2021, Thompson filed an Objection to AR.

49. SBA did not file a Response to the Petition.

50. The AR was closed on January 24, 2022.

51. On March 14, 2022, OHA issued its Decision Denying the Thompson appeal. (Ex 4).

52. On March 23, 2022, Thompson filed a Motion for Reconsideration, citing errors in

fact and law. On April 13, 2022, OHA denied Thompson's Motion for Reconsideration and stated that under 13 C.F.R. § 134.1211 (c)(3) that this decision would become the final SBA decision following 30 calendar days of service on the parties. (Ex 5)

## APPLICABLE LAW

53. **PPP Loan Forgiveness**

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation or the required certification. 15 U.S.C. § 636m(f). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. § 636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following the issuance of an initial decision, the Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA

Office of Capital Access which reviews the PPP loan and finds a borrower:

(1) Was ineligible for a PPP loan;

(2) Was ineligible for the PPP loan amount received or used PPP loan proceeds forunauthorized uses;

(3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its fullapproval or partial approval decision issued to the SBA; and/or,

(4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denialdecision to

SBA. 13 C.F.R. §134.1201(b)(1)-(4).

**There has been no finding or allegation that Thompson failed to expend the payroll funds properly.**

54. **Common Control**

Thompson and Rental Resource should be considered under common control. The companies' payrolls should be considered reported as one (See IRS 941's), and the combined payrolls should be regarded as controlling. Therefore, the SBA should use the aggregate payroll amount to determine the loan forgiveness rather than a 27% portion.

55. **Affiliation**

**Section 13 C.F.R. 121.103(a)(1)-(7)**

(a) General Principles of Affiliation.

(1) Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists.

(2) SBA considers factors such as ownership, management, previous relationships with or ties to another concern, and contractual relationships, in determining whether affiliation

      exists.

(3) Control may be affirmative or negative. Negative control includes, but is not limited to, instances where a minority shareholder has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.

(4) Affiliation may be found where an individual, concern, or entity exercises control indirectly through a third party.

(5) In determining whether affiliation exists, SBA will consider the totality of the circumstances, and may find affiliation even though no single factor is sufficient to constitute affiliation.

(6) In determining the concern's size, SBA counts the receipts, employees, or other measure of size of the concern whose size is at issue and all of its domestic and foreign affiliates, regardless of whether the affiliates are organized for profit.

(7) For applicants in SBA's Business Loan, Disaster Loan, and Surety Bond Guarantee Programs, the size standards and bases for affiliation are set forth in § 121.301.

**Section 13 C.F.R. 121.301(f)(1)-(4)**

(1) Affiliation based on ownership. For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the Board of directors or shareholders.

(2) Affiliation arising under stock options, convertible securities, and agreements to merge.

    (i) In determining size, SBA considers stock options, convertible securities, and agreements to merge (including agreements in principle) to have a present effect on the power to control a concern. SBA treats such options, convertible securities, and agreements as though the rights granted have been exercised.

    (ii) Agreements to open or continue negotiations towards the

   possibility of a merger or a sale of stock at some later date are not considered "agreements in principle" and are thus not given present effect.

  (iii) Options, convertible securities, and agreements that are subject to conditions precedent which are incapable of fulfillment, speculative, conjectural, or unenforceable under state or Federal law, or where the probability of the transaction (or exercise of the rights) occurring is shown to be extremely remote, are not given present effect.

  (iv) An individual, concern or other entity that controls one or more other concerns cannot use options, convertible securities, or agreements to appear to terminate such control before actually doing so. SBA will not give present effect to individuals', concerns', or other entities' ability to divest all or part of their ownership interest in order to avoid a finding of affiliation.

(3) Affiliation based on management. Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

(4) Affiliation based on identity of interest. ***Affiliation arises when there is an identity of interest between close relatives***, as defined in 13 C.F.R. 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate. (Emphasis added).

  **56.**  **Aggregation**

**Section 13 C.F.R. 121.103(f)**

 (f) Affiliation based on identity of interest. Affiliation may arise among two or more persons with an identity of interest. Individuals or firms that have identical or substantially identical business or economic interests (such as family members, individuals or firms with common investments, or firms that are economically dependent through contractual or other relationships) ***may be treated as one party***

*with such interests aggregated.* Where SBA determines that such interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate.

**26 U.S. Code § 414**

Employees of partnerships, proprietorships, etc., which are under common control

(1) In general

Except as provided in paragraph (2), for purposes of sections 401, 408(k), 408(p), 410, 411, 415, and 416, under regulations prescribed by the Secretary, *all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer.* The regulations prescribed under this subsection shall be based on principles similar to the principles which apply in the case of subsection (b). (emphasis added).

## DISCUSSION

The retrospective application of the affiliation rules to size only has harmed and will continue to harm Thompson. While fluctuating economic uncertainty driven by the pandemic, Thompson now has to worry that the loan forgiveness it reasonably expected will ultimately not be available. Thompson will now have to divert resources from other endeavors to repay the unforeseen loan obligation. The likelihood that its loan will not be forgiven requires Thompson to take costly steps in order to mitigate the financial impact of having to repay the PPP loan, which could lead to curtailing parts of the business to generate cash and could even lead to laying off the employees it was able to retain during the pandemic due to the PPP loan.

57. Thompson certified its eligibility for a PPP loan in good faith. Nevertheless, it now fears that it could be held liable based on its PPP loan application for loan forgiveness.

58. Thompson reasonably relied on the SBA's approval of its PPP loan on April 14, 2020, and the SBA's prior representations that the PPP loans would be forgiven so long as Thompson was eligible.

## COUNT ONE
### Agency Action Contrary to Law Loan Approved Before Exclusion Rule
### 5 U.S.C. §706(2)(A), (C)

59. Thompson incorporates the foregoing paragraphs as if fully set forth herein.

60. The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

61. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(A), (C).

62. On April 6, 2020, Thompson submitted its PPP loan application to the Lender.

63. On April 20, 2020, the Lender approved Thompson's loan application.

64. Thompson used its PPP loan proceeds for payroll and other eligible expenses under the CARES Act.

65. The CARES Act, as amended, provides that all such "*eligible recipient[s] shall* be eligible for forgiveness of indebtedness," provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

66. Thompson used at least 60 percent of its PPP loan proceeds for payroll.

67. Because Thompson properly and lawfully utilized its loan proceeds, which it was eligible to receive at the time it applied for its PPP loan and at the time its loan application was approved, Thompson applied for loan forgiveness on September 24, 2020. The Lender approved its loan forgiveness application.

68. Thompson is entitled to a permanent injunction enjoining Defendants from retroactively

excluding the affiliation rules.

## COUNT TWO
### Agency Action Contrary to Law 5 U.S.C. §706(2)(A), (C)

69. Thompson incorporates the foregoing paragraphs as if fully set forth herein.

70. The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

71. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id*. § 706(2)(A), (C).

72.     The CARES Act provides that "in addition to small business concerns, *any* business concern . . . *shall* be eligible to receive a covered loan," CARES Act § 1102(a)(36)(D)(i) (emphasis added), subject only to the conditions that a business meets the CARES Act's size requirement, makes the required good-faith borrower certification, and has been in operation as of February 15, 2020.

73.     The CARES Act, as amended, also provides that all such "eligible recipient[s] shall be eligible for forgiveness of indebtedness," provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

74.     Thompson used at least 60 percent of its PPP loan proceeds for payroll.

75.     Nothing in the CARES Act authorizes the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including applying the affiliation and aggregation statutes exclusively to size requirements.

## COUNT THREE
### Arbitrary & Capricious Agency Action 5 U.S.C. §706(2)(A)

76.     Thompson incorporates the foregoing paragraphs as if fully set forth herein.

77. The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

78. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious," or "an abuse of discretion." *Id.* § 706(2)(A).

79. The CARES Act provides that "in addition to small business concerns, *any* business concern . . . *shall* be eligible to receive a covered loan," 15 U.S.C. § 636(a)(36)(D)(i) (emphases added), subject only to the conditions that a business meet the Act's size requirement, makes the required good-faith borrower certification, and have been in operation as of February 15, 2020.

80. The CARES Act, as amended, also provides that all such "eligible recipient[s] shall be eligible for forgiveness of indebtedness," provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

81. Thompson used at least 60 percent of its PPP loan proceeds for payroll.

82. The CARES Act does not authorize the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including applying the affiliation and aggregation statutes exclusively to size requirements.

83. Defendants' exclusion of Rental as an eligible affiliated business is an abuse of discretion.

**WHEREFORE**, Thompson respectfully requests this Court enter judgment in its favor and against Defendants the United States Small Business Administration, Isabella Casillas Guzman in her official capacity as Administrator of the SBA, Janet Yellen in her official capacity as United States Secretary of Treasury, and the United States of America, and enter an Order declaring that the total amount of the PPP loan ($407,192.00)be forgiven and awarding Thompson its reasonable

attorney fees and costs, and for such other, further and different relief as the Court deems just and equitable.

Dated this 27th day of May 2022.

**Respectfully submitted,**

**DEGENHART & DEGENHART LAW, LLC**
**ATTORNEYS FOR PLAINTIFF**
**2131 PARK STREET**
**COLUMBIA, SC 29201**
**TELEPHONE: (803) 920-4794**
**FAX: (803) 771-7006**
**Attorney ID:5600**
**EMAIL:**
**pdegenhart@degenhartlaw.com**


By: **/s/ Paul V/ Degenhart**
     PAUL V. DEGENHART